**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEANNA PAGANO,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | Civil Action No.<br><br>25-cv-16309 (BRM) (JRA)<br><br>**REPORT AND RECOMMENDATION** |

**José R. Almonte, U.S.M.J.**

Defendant Charles Schwab & Co., Inc. ("Schwab")—the former employer of Plaintiff Deanna Pagano ("Ms. Pagano")—moves to compel arbitration of all claims in the Complaint and to stay this action pending arbitration. Dkt. Nos. 6, 10 (the "Motion"). Ms. Pagano, who alleges that Schwab discriminated against her based on her age, opposes the Motion. Dkt. No. 9. The parties' primary disputes fall into three categories: (1) whether a declaration submitted in support of Schwab's Motion should be stricken; (2) whether the Federal Arbitration Act ("FAA") governs the parties' arbitration agreement notwithstanding New Jersey law, which renders unenforceable any employment contract provision that waives an employee's "substantive or procedural right or remedy relating to a claim of discrimination," N.J. Stat. Ann. § 10:5-12.7; and (3) if the FAA governs, whether the arbitration agreement clearly and unambiguously requires Ms. Pagano to arbitrate the claims she asserted in this action. The Honorable Brian R. Martinotti, United States District Judge,

referred the Motion to me for a Report and Recommendation. Having considered the parties' submissions, I decide the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, I respectfully recommend that Schwab's Motion be GRANTED.

**BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Ms. Pagano's allegations that her former employer, Schwab, discriminated against her because of her age. *See generally* Dkt. No. 1, Compl. She initially worked for TD Ameritrade, which Schwab acquired in 2020. *Id.* ¶¶ 6, 9; Dkt. No. 9 at 2. Following the acquisition, she continued her employment with Schwab as a Director of Marketing Technology and Analytics until June 2, 2025, at which point Schwab eliminated her position as part of a company-wide restructuring. Compl. ¶ 12. Ms. Pagano alleges that her age, not the restructuring, was the real reason for her termination. *Id.* ¶ 20. On July 10, 2025, the Equal Employment Opportunity Commission ("EEOC") issued her a Notice of Right to Sue. *Id.* ¶ 18. Thereafter, she filed the instant lawsuit, alleging that Schwab violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -50. *Id.* ¶ 20.

Schwab responded to the lawsuit by filing the instant Motion, arguing that Ms. Pagano agreed to arbitrate her claims pursuant to a "Confidentiality, Nonsolicitation, and Intellectual Property Ownership Agreement" (the "Agreement") that she signed on October 6, 2020, after Schwab acquired TD Ameritrade. *See* Dkt. No. 6-3, Exs. A–

B. The first page of the Agreement states, in bold letters: "I agree as follows: . . . **THAT THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION AND I AGREE TO SUBMIT TO ARBITRATION ALL CLAIMS AND DISPUTES AS SPECIFIED IN PARAGRAPH 16, BELOW.**" Dkt. No. 6-3, Ex. B at 1. Paragraph 16 ("the Arbitration Provision")[1] states, among other things, that Ms. Pagano agreed "to arbitrate any and all disputes, controversies or claims . . . that otherwise would have been decidable in any court of law . . . ." *Id.* ¶ 16(a). The same paragraph explains that Ms. Pagano agreed to waive any claim against Schwab relating to the termination of her employment, including "statutory claims involving . . . discrimination arising under . . . the Age Discrimination in Employment Act, . . . and any other federal, state or local laws or ordinances." *Id.* The Arbitration Provision further provides that Ms. Pagano waived "the right to trial by jury of any claim . . . as set forth in this Agreement," *id.* ¶ 16(e), while preserving her ability to pursue administrative remedies, such as filing a claim with the EEOC, "subject to the provisions of this Agreement." *Id.* ¶ 16(a). The parties dispute whether the Arbitration Provision is valid and whether it is a clear waiver of Ms. Pagano's right to have her claims decided in court. Dkt. No. 6-1 at 1; Dkt. No. 9 at 1–2.

## LEGAL STANDARD

The FAA creates "a strong federal policy in favor of the resolution of disputes through arbitration" by encouraging the enforcement of arbitration agreements. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (en

[1] The Arbitration Provision consists of paragraphs 16(a)–(e) at Dkt. No. 6–3, Ex. B at 8–9.

banc) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (citations omitted); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted) (noting that before compelling arbitration, courts must be satisfied that the parties have an agreement to arbitrate, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Montgomery v. Bristol-Myers Squibb Co.*, No. 19-cv-19948, 2020 WL 3169373, at *2 (D.N.J. June 15, 2020) (quoting *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D.N.J. 2013)).

Courts analyze motions to compel arbitration under one of two standards: either under Rule 12(b)(6) of the Federal Rules of Civil Procedure (motion to dismiss) or Rule 56 (motion for summary judgment). *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217–18 (3d Cir. 2019). Neither party addresses which standard applies here. I conclude that the Motion should be evaluated under the summary judgment standard and that no additional discovery is necessary to resolve it.

The Rule 12(b)(6) motion to dismiss standard applies to motions to compel arbitration "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)[.]" *Guidotti*

*v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)); *see Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 115 (3d Cir. 2017).

> [E]ven where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations.

*Venson v. Pro Custom Solar LLC*, No. 19-cv-19227, 2022 WL 4596725, at *6 (D.N.J. Sep. 30, 2022) (collecting cases). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Lloyd v. Retail Equation, Inc.*, No. 21-cv-17057, 2022 WL 18024204, at *7 (D.N.J. Dec. 29, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the Complaint does not attach or in any way reference or rely upon the Agreement. *See* Compl. The Rule 12(b)(6) standard, therefore, does not apply.

Because I must consider evidence beyond the pleadings to determine the arbitrability of the claims, the Motion is governed by the Rule 56 summary judgment standard. Generally, the motion for summary judgment standard applies to motions to compel arbitration if "(1) the complaint—and documents relied on in the complaint—are unclear regarding whether the parties agreed to arbitrate; or (2) the non-moving party 'has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue.'" *Brito v. LG Elecs. USA, Inc.*, No. 22-cv-05777, 2023

WL 2675132, at *4 (D.N.J. Mar. 29, 2023) (quoting *Guidotti*, 716 F.3d at 774–76). In *Guidotti*, the Third Circuit explained that:

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties *should be* entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

716 F.3d at 776 (emphasis added) (citation omitted). However, in *Young v. Experian Info. Sols., Inc.*, the Third Circuit clarified that "some language in *Guidotti* is more prescriptive than is helpful or accurate" and noted that "*Guidotti*'s call for limited discovery . . . is best understood as being itself limited"—that is, it encourages, but does not require, limited discovery. 119 F.4th 314, 319–20 (3d Cir. 2024). In *Young*, like here, the complaint made no reference to the arbitration agreement, did not attach the agreement as an exhibit, and did not base the claims on the existence of the agreement. *See id.* at 320–22. The Third Circuit in *Young* noted that the District Court did not err in applying the summary judgment standard, but it did find that the additional limited discovery was unnecessary where there was no factual dispute "as to the existence or scope of the arbitration agreement." *Id.* at 320. Accordingly, in the absence of a factual dispute regarding whether a valid agreement to arbitrate exists, "there is nothing to discover and thus no need to delay a decision on the motion to compel." *Id.* at 319–20.

That is the case here. Neither party contends that discovery is necessary. Ms. Pagano does not contest that she signed the Agreement. Declaration of Deanna

Pagano, Dkt. No. 9-1 ¶¶ 5–6, 10. Nor does she raise any additional facts sufficient to place the Agreement to arbitrate in issue. Her challenges to the Agreement are all purely legal, not factual, as will be explained below. Under these circumstances, it is appropriate to decide Schwab's motion under the Rule 56 standard without requiring limited discovery. *See, e.g., Carlton v. Nat'l Debt Relief LLC*, No. 26-cv-00944, 2026 WL 1430099, at *2 (D.N.J. May 21, 2026) (finding pre-arbitration discovery unnecessary where the plaintiff did not raise any factual dispute as to the existence of agreement to arbitrate); *Sarker v. Citigroup, Inc.*, No. 24-cv-08517, 2025 WL 428558, at *1–2 (D.N.J. Feb. 7, 2025) (applying the Rule 56 standard without requiring discovery); *Kamineni v. Tesla, Inc.*, No. 19-cv-14288, 2020 WL 57867, at *1–2 (D.N.J. Jan. 6, 2020) (same).

Accordingly, when looking at a motion to compel arbitration through the lens of Rule 56, the motion will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes regarding unnecessary or irrelevant facts will not prevent a court from granting a motion for summary judgment, *id.*, or, in this case, a motion to compel arbitration.

## DISCUSSION

Ms. Pagano opposes the Motion on three grounds: (1) that Schwab's declaration is defective and, therefore, should not be considered; (2) that the FAA does not govern the Arbitration Provision and, as a result, the Arbitration Provision is unenforceable under New Jersey law; and (3) that the Arbitration Provision is vague and ambiguous. I will address each argument in turn.

### A. Schwab's Declaration

In its initial Motion papers, Schwab submitted a declaration from one of its employees attesting to several facts, including that Ms. Pagano signed the Agreement. *See* Declaration of Nolan Miller, Dkt. No. 6-2 ("Miller Decl."). She does not deny that fact. Instead, she argues that the Court must disregard all facts offered by Schwab via its supporting declaration, as it is purportedly defective under 28 U.S.C. § 1746. Dkt. No. 9 at 5. Her main contention is that, although Mr. Miller's declaration is made "subject to the penalties of perjury," it does not contain the additional phrase: "the foregoing is true and correct." *Id.* According to Ms. Pagano, without this language, Mr. Miller's declaration should be stricken; thus, there is no evidence for the Court to consider and, therefore, the Motion should be denied. *Id.* In response, Schwab submitted a supplemental declaration curing the alleged defect and asserting that "the foregoing is true and correct." *See* Supplemental Declaration of Nolan Miller, Dkt. No. 10-1 ("Suppl. Miller Decl.").

I am unpersuaded that the initial technical defect warrants the denial of Schwab's Motion. As Ms. Pagano acknowledges, Mr. Miller's initial declaration was

submitted "subject to the penalties of perjury" (Miller Decl. at 1; Dkt. No. 9 at 5), which implies the information is "true and correct." Moreover, Schwab promptly submitted a supplemental declaration curing the defect, including the language that "the foregoing is true and correct." Suppl. Miller Decl. at 3; *see Matos v. Merck & Co.*, No. 13-cv-02648, 2015 WL 894253, at *2 n.6 (E.D. Pa. Mar. 3, 2015) (declining to strike a declaration that did not comply with § 1746 where the movant cured the defect through a supplemental declaration reaffirming the original factual assertions), *aff'd*, 643 F. App'x 187 (3d Cir. 2016). Therefore, I decline to deny the Motion based on a technical defect that has since been cured. *See* Fed. R. Civ. P. 56(e)(1) (providing that if a party "fails to properly support an assertion of fact . . . , the court may . . . give an opportunity to properly support or address the fact").

### B. Whether the FAA Governs the Agreement and Preempts N.J. Stat. Ann. § 10:5-12.7

Next, regarding the NJLAD claim, Ms. Pagano contends that pre-dispute agreements to arbitrate discrimination claims are unenforceable under N.J. Stat. Ann. § 10:5-12.7 ("Section 12.7"). Dkt. No. 9 at 6. Section 12.7 states, in relevant part:

> a. A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable.
>
> b. No right or remedy under the "Law Against Discrimination," P.L.1945, c.169 (C.10:5-1 et seq.) or any other statute or case law shall be prospectively waived.

N.J. Stat. Ann. § 10:5-12.7.

This issue has been addressed in a case both parties cite: *Antonucci v. Curvature Newco, Inc.*, 270 A.3d 1088, 1095–97 (N.J. Super. Ct. App. Div. 2022). There, the court held that when an agreement is governed by the FAA, the FAA generally preempts Section 12.7. *Id.* Part of the court's rationale in *Antonucci* was that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral[,] rather than a judicial, forum." *Id.* at 1096–97 (quoting *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 882 (N.J. 2002)). The parties agree that the FAA preempts Section 12.7, but they disagree on whether the FAA governs the Agreement here. *See* Dkt. No. 9 at 6; Dkt. No. 10 at 4–6. If it does, the terms of the Arbitration Provision will dictate the arbitrability of Ms. Pagano's claims.

Ms. Pagano contends that the FAA does not apply to the Agreement. Dkt. No. 9 at 7. She argues that because the Agreement explicitly contains a New Jersey choice-of-law provision,[2] Schwab waived the right to have its Arbitration Provision interpreted in accordance with the FAA. *Id.* Ms. Pagano further argues that there is "no evidence" that Schwab intended the FAA to apply because the FAA is not referenced anywhere in the Agreement. *Id.*

Schwab, on the other hand, contends that the FAA does apply. Schwab argues that a general choice-of-law clause does not displace the FAA's enforcement here. Dkt. No. 10 at 4. More specifically, Schwab argues that a "general choice-of-law

---

[2] The Agreement provides, in relevant part, that "[t]he terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by the Company, without giving effect to such state's conflict of law principles." Dkt. No. 6–3, Ex. B at 9. Because Ms. Pagano worked in New Jersey, New Jersey law applies.

clause therefore cannot reasonably be construed as an intentional relinquishment of federally protected arbitration rights or as a contractual opt-out of the FAA." *Id.* at 5. It is not whether the Agreement explicitly references the FAA that controls whether the FAA applies, Schwab argues, but rather whether there is a valid arbitration agreement affecting interstate commerce. *Id.* Schwab accurately notes that Ms. Pagano fails to cite any language in the Agreement expressly disclaiming the FAA. *Id.*

I find that the FAA applies to the Agreement. The FAA states: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The Agreement need not explicitly state that the FAA governs. Rather, the Court must analyze whether the Agreement contains a written arbitration provision and evidences a transaction involving interstate commerce. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, No. 07-cv-05122, 2009 WL 349147, at *2 (D.N.J. Feb. 11, 2009) (noting that the FAA "governs **all contracts** . . . that involve commerce and include an agreement between the parties to arbitrate disputes arising from the contract") (emphasis added) (citing 9 U.S.C. § 2)).

Employment disputes are generally considered to involve commerce under 9 U.S.C. § 2. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001))).

Further, courts have interpreted the "involving commerce" requirement broadly, requiring only the slightest nexus to interstate commerce. *Gilbert v. Fox & Roach, LP*, No. 05-cv-00668, 2005 WL 2347121, at *2 (D.N.J. Sep. 23, 2005) (citations omitted) ("The FAA permits district courts to enforce arbitration agreements in employment contracts, so long as the provision has a slight nexus to interstate commerce.").

Here, Ms. Pagano was employed in New Jersey throughout her employment with Schwab. Dkt. No. 9 at 5. Schwab is alleged to be a brokerage, banking, and financial advisory services company headquartered in Westlake, Texas. Compl. ¶ 2. This employment relationship clearly establishes interstate commerce. *See Jayasundera v. Macy's Logisitics & Operations, Dep't of Hum. Res.*, No. 14-cv-07455, 2015 WL 4623508, at *3 (D.N.J. Aug. 3, 2015); *see also Gomez v. PDS Tech, Inc.*, No. 17-cv-12351, 2018 WL 1871461, at *3 (D.N.J. Apr. 19, 2018) (finding the agreement at issue was "unquestionably subject to federal law" despite an arbitration provision not referencing the FAA because of the defendant's uncontested business operations in many states). Therefore, I find the FAA governs the Agreement.

Consequently, as courts in the State of New Jersey and in this District have continuously found, the FAA preempts Section 12.7, and Ms. Pagano's NJLAD claim can be subject to arbitration. *Antonucci*, 270 A.3d at 1096–97; *Stockling v. Evicore Healthcare MSI, LLC*, No. 23-cv-21855, 2024 WL 3409444, at *4 (D.N.J. July 15, 2024) (citations omitted) ("As a general matter, NJLAD claims can be subject to arbitration."); *Triola v. Dolgencorp, LLC*, No. 22-cv-00840, 2022 WL 16834579, at *6

(D.N.J. Nov. 9, 2022) (concluding that the FAA preempts Section 12.7 and enforcing the arbitration agreement) (collecting cases); *Dolgencorp LLC v. Sica*, No. 22-cv-04269, 2022 WL 4218179, at *5 (D.N.J. Sep. 13, 2022) (finding that the FAA preempts Section 12.7); *N.J. Civ. Just. Inst. v. Grewal*, No. 19-cv-17518, 2021 WL 1138144, at *7 (D.N.J. Mar. 25, 2021) ("[T]he Court concludes that Section 12.7 is preempted by the FAA."). This is consistent with the FAA's aim to prevent state law from undermining parties' contracts to arbitrate. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58–59, 63–64 (1995) (affirming the arbitrability of a punitive damages claim despite a New York state law permitting only courts, not arbitrators, to award punitive damages); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (noting that in passing the FAA, Congress intended "to foreclose state legislative attempts to undercut the enforceability of arbitration agreements"); *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 627 (3d Cir. 2003) (holding that the FAA preempted a Pennsylvania law that required only judges to decide bad faith claims).

Moreover, I find unavailing Ms. Pagano's contention that the choice-of-law provision in the Agreement waives Schwab's right to have its Arbitration Provision governed by the FAA. Dkt. No. 9 at 7. While it is true that the Agreement is governed by New Jersey law, a general choice-of-law clause cannot reasonably be construed as an intentional relinquishment of federally protected arbitration rights or as an opt-out from the FAA. *See Roadway Package Sys. Inc. v. Kayser,* 257 F.3d 287, 288–89 (3d Cir. 2001) (holding that a generic choice-of-law clause, standing alone, "is

insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime"); *see Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 710 (3d Cir. 2009) (citations omitted) (affirming the principles set forth in *Roadway Package* that "parties can contract out of the FAA and select alternate rules to govern arbitration proceedings between them. To do so, parties must 'manifest[] a clear intent,' and a generic choice-of-law provision, standing alone, is not sufficient evidence of such intent[.]"). As the Third Circuit explained in *Roadway Package*:

> Choice-of-law clauses are ubiquitous in commercial agreements, and with good reason. Contract law is mostly state law, and it varies from state to state. As a result, parties to commercial agreements often care a great deal about which state's law will govern their association. And because modern choice-of-law doctrines tend to place great weight on intent, contracting parties have an incentive to include choice-of-law clauses in their agreements. Commercial parties often also bargain for arbitration clauses, hoping to benefit from arbitration's purported advantages over litigation. As a result, many commercial contracts include both choice-of-law and arbitration clauses.

257 F.3d at 293. While *Roadway Package* was decided in the context of a commercial dispute, the legal principles apply with equal force to this case.

Accordingly, the Agreement's choice-of-law provision does not displace the FAA. Instead, it clarifies that whichever tribunal presides over the case—a court or an arbitrator—shall be guided by New Jersey law. Therefore, I find that the FAA applies and the Arbitration Provision is enforceable, notwithstanding the NJLAD's prohibition under Section 12.7.[3]

---

[3] Ms. Pagano contends that the language "or any other statute" in Section 12.7 encompasses her claims under the ADEA. Dkt. No. 9 at 6. Having already determined that the FAA preempts Section 12.7, it follows that Ms. Pagano's ADEA claims are also subject to arbitration. Indeed, the Agreement provides for the arbitration of "all . . . statutory claims involving, among other things, . . . discrimination arising under . . . *the Age Discrimination in Employment Act* . . . ." Dkt. No. 6–3, Ex.

### C. Whether the Parties Entered into a Valid, Clear, and Unambiguous Arbitration Agreement

The parties do not appear to dispute whether a valid arbitration agreement exists.[4] Rather, Ms. Pagano contends that the Agreement is unclear and ambiguous. Dkt. No. 9 at 7–11. In determining whether the Agreement is clear and unambiguous, courts must look at general principles of state contract law. *Noble*, 682 F. App'x at 116. Here, New Jersey law governs. *See* Dkt. No. 6-1 at 5–10; Dkt. No. 9 at 7–11.

Under New Jersey law, "when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver 'must be clearly and unmistakably established.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 314 (N.J. 2014) (citation omitted) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 670 (N.J. 2001)). That is because "[m]utual assent requires that the parties have an understanding of the terms to which they have agreed." *Id.* at 313. Thus, any contractual "waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v.*

---

B ¶ 16(a) (emphasis added). Thus, the Court need not opine as to the scope of the "or any other statute" language.

[4] I am satisfied that the parties have established the requisite elements of a contract under New Jersey law: offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *See Noble*, 682 F. App'x at 116. Ms. Pagano signing the Agreement constituted an acceptance of Schwab's employment offer. Her continued employment with Schwab is sufficient to constitute consideration. *See Bourgeois v. Nordstrom, Inc.*, No. 11-cv-02442, 2012 WL 42917, at *4 (D.N.J. Jan. 9, 2012) (noting that continued employment constitutes sufficient consideration for certain employment-related agreements). Moreover, the Agreement referenced the types of claims related to her employment that would be subject to arbitration. Her argument that she "likely scrolled to the end [of the Agreement] and signed it automatically" does not negate her assent to clear contractual terms. Dkt. No. 9 at 3; *see Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010) ("When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." (citing *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 685 (N.J. 1992))); *Noble*, 682 F. App'x at 116 (citations omitted) ("Once there is reasonable notice, a party is bound by those terms, even if he failed to read them.").

*Cigna Corp.*, 814 A.2d 1098, 1104 (N.J. 2003). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese*, 99 A.3d at 314. As just one example, the Supreme Court of New Jersey has "upheld an arbitration clause because it explained that the plaintiff agreed 'to waive [her] right to a jury trial' and that 'all disputes relating to [her] employment . . . shall be decided by an arbitrator.'" *Id.* (citing *Martindale*, 800 A.2d at 879).

Here, Ms. Pagano contends that the Agreement does not constitute a clear waiver of her right to have her claims proceed in court. Dkt. No. 9 at 7–11. She asserts that "Schwab's policy appears designed to be overlooked," that there is nothing "[i]n the title of the policy to indicate that the policy involves arbitration," and that the Arbitration Provision is "at the very end of a nine[-]page document." Dkt. No. 9 at 9. Ms. Pagano claims that the Agreement, "contains no language warning about what [she] is giving up," that it "does not state anywhere that [she] is agreeing to give up her right to go to court," or that she "is giving up her right to have her claims decided by a jury." *Id.*

I am unpersuaded by Ms. Pagano's arguments. As Schwab highlights, the first page of the Agreement clearly states in bolded, capital letters: "**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION AND I AGREE TO SUBMIT TO ARBITRATION ALL CLAIMS AND DISPUTES AS SPECIFIED IN PARAGRAPH 16, BELOW**." Dkt. No. 6-3, Ex. B at 1; Dkt. No. 10 at 7. Turning to paragraph 16, the Arbitration Provision explicitly provides that Ms. Pagano agrees "to arbitrate any and all disputes, controversies or claims between [her] and the

Company that otherwise would have been decidable in any court of law," including all statutory claims involving, discrimination arising under the "Age Discrimination in Employment Act" and "any other federal, state, or local laws" relating to the termination of her employment. Dkt. No. 6-3, Ex. B ¶ 16(a). The Arbitration Provision also states, "that both the Company and [Ms. Pagano] are waiving the right to trial by jury of any claim that [they] may have against each other as set forth in this Agreement." *Id.* ¶ 16(e).

I find that (1) the Arbitration Provision clearly and unambiguously communicates that arbitration replaces adjudication in court before a judge or jury and (2) that the Agreement provides reasonable notice of the Arbitration Provision. By viewing the first page of the Agreement, a reader is immediately put on notice of the Arbitration Provision's presence and importance. Then, turning to the language of the Arbitration Provision, Ms. Pagano very clearly agreed to arbitrate "any and all disputes, controversies or claims between [her] and the Company" that otherwise would be adjudicated in court, and that Ms. Pagano waived her right to a trial by jury. Dkt. No. 6-3, Ex. B ¶ 16. These provisions directly contradict Ms. Pagano's assertions that the Agreement "contains no language warning about what [she] is giving up," that it "does not state anywhere that [she] is agreeing to give up her right to go to court," or that she "is giving up her right to have her claims decided by a jury." Dkt. No. 9 at 9.

Further, Ms. Pagano provides no evidence to support her contention that the Arbitration Provision is "designed to be overlooked" other than unconvincingly

claiming that it appears at the end of a nine-page document. *Id.* To the contrary, the very first page of the Agreement draws a reader's eyes to the bolded, capital letters making clear that the Agreement contains an important Arbitration Provision. *See* Dkt. No. 6-3, Ex. B at 1.

Ms. Pagano's last argument on this issue is that the Arbitration Provision is vague and confusing because it contains the following language:

> I understand that this Agreement does not preclude the filing of a claim with . . . the Equal Employment Opportunity Commission and similar state agencies and does not preclude claims for workers' compensation benefits, claims for unemployment compensation, or claims that may not be arbitrated according to applicable law. However, if I choose to pursue a claim following the exhaustion of administrative remedies through filing of an administrative charge, I understand that the claim will be subject to the provisions of this Agreement.

Dkt. No. 6-3, Ex. B ¶ 16(a); Dkt. No. 9 at 10. According to Ms. Pagano, "[a]n employee reading the policy could reasonably believe that filing a charge with the EEOC is exempt from arbitration and that when the EEOC issues a right to sue letter, they can then . . . pursue their claim in court." *Id.* at 11.

The Supreme Court and courts in this District have rejected Ms. Pagano's arguments. In *Gilmer v. Interstate/Johnson Lane Corp.*, the Supreme Court addressed the propriety of allowing arbitration of an ADEA claim and found:

> We also are unpersuaded by the argument that arbitration will undermine the role of the EEOC . . . . An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC. . . . The mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration.

500 U.S. 20, 28–29 (1991) (citations omitted); *see also Reljic v. Tullett Prebon Americas Corp.*, No. 11-cv-01323, 2011 WL 2491342, at *2 (D.N.J. June 21, 2011)

(rejecting plaintiff's argument that the arbitration agreement was unenforceable because it interfered with her ability to file an EEOC charge and pursue subsequent litigation, explaining that arbitration does not undermine the EEOC's enforcement authority). Ms. Pagano's arguments are without merit. Therefore, I find that the Agreement is a valid contract and that the Arbitration Provision is a clear and unambiguous waiver of rights provision.[5]

**D. The Scope of the Arbitration Provision**

As noted above, before granting a motion to compel arbitration, the Court must find that "the dispute at issue falls within the scope of" the Arbitration Provision. *Century Indem.*, 584 F.3d at 523 (citations omitted). Ms. Pagano does not appear to contest that her claims fall within the scope of the Arbitration Provision. Consequently, I need not address that issue. That is so, because of the well-established party presentation principle—a "rule that points not argued will not be considered[.]" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026)

---

[5] Ms. Pagano's reliance on two opinions from the Supreme Court of New Jersey do not alter this conclusion. In *Atalese,* the court addressed an arbitration provision that did not indicate with any modicum of specificity which types of claims were subject to arbitration, or that plaintiff was "waiving her right to seek relief in court for a breach of her statutory rights." 99 A.3d at 315. As explained above, that is not the case here. Separately, Ms. Pagano invites the Court to conclude that the Agreement in this case is unenforceable because it does not contain the same or similar language as the agreement in *Skuse v. Pfizer, Inc.*, which the court found enforceable. 236 A.3d 939, 957 (N.J. 2020); Dkt. No. 9 at 10. In *Skuse*, the agreement listed the types of claims covered and then stated they "are subject to arbitration pursuant to the terms of this Agreement and will be resolved by arbitration and NOT by a court or jury." *Id.* at 943; Dkt. No. 9 at 10. Ms. Pagano also notes that the agreement in *Skuse* stated in all capital letters: "THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR JURY DECIDE ANY COVERED CLAIMS." *Id.* Juxtaposing the agreements in *Skuse* and here, I do not see a material difference between the two. But even if the arbitration clause in *Skuse* was more expansive than the one in this case, it is worth repeating that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese*, 99 A.3d at 315. I am satisfied that the Arbitration Provision is sufficiently clear and unambiguous for reasons explained above.

(citing *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)). As the Supreme Court explained, "[b]ecause courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Id.* (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)). Therefore, on this basis alone, I find that the claims in Ms. Pagano's Complaint are within the scope of the Arbitration Provision, as Ms. Pagano has forfeited the right to argue otherwise.

Although Ms. Pagano does not dispute that her claims fall within the scope of the Arbitration Provision, I have independently concluded that they do. I briefly address this issue for the sake of completeness. Generally, an arbitration agreement must "reference the types of claims waived by the provision," such as by noting that the employee is waiving "workplace discrimination claims." *Moon v. Breathless Inc.*, 868 F.3d 209, 214 (3d Cir. 2017) (citing *Garfinkel*, 773 A.2d at 672). But "it need not . . . mention the specific statutory rights at issue." *Moon*, 868 F.3d at 214. To ascertain whether the claims fall within the scope of the Arbitration Provision, the Court must compare the factual allegations in the Complaint to the Arbitration Provision. Then, "[i]f the allegations of the complaint involve matters covered" by the Arbitration Provision, the claims must be arbitrated. *RCM Techs., Inc. v. Brignik Tech, Inc.*, 137 F. Supp. 2d 550, 553 (D.N.J. 2001) (quoting *Mut. Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J.), *aff'd*, 970 F.2d 899 (3d Cir. 1992)).

Here, the Arbitration Provision provides that Ms. Pagano agreed to arbitrate "any and all disputes, controversies or claims between [her] and the Company…

based on, arising out of, or relating to, this Agreement, the breach or termination of this Agreement, my employment with the Company or **the termination of my employment** . . . including without limitation, any and all contract, tort or statutory claims involving, . . . **discrimination arising under** . . . the **Age Discrimination in Employment Act**, . . . and **any other federal, state or local laws** or ordinances." Dkt. No. 6-3, Ex. B ¶ 16(a) (emphasis added). Looking to the Complaint, Ms. Pagano alleges that Schwab treated her "disparately and terminated her employment due to her age," in violation of the ADEA and the NJLAD. Compl. ¶ 20. Thus, Ms. Pagano's claims arise out of, or relate to, her employment with Schwab and the termination of her employment. *See DiValerio v. Best Care Lab'y, LLC,* No. 20-cv-17268, 2021 WL 4704963, at *12 (D.N.J. Oct. 8, 2021) (noting that "[c]ourts 'have generally read the terms "arising out of" or "relating to" a contract as indicative of an "extremely broad" agreement to arbitrate any dispute relating in *any* way to the contract.'") (emphasis in original) (quoting *Curtis v. Cellco P'ship*, 992 A.2d 795, 802 (N.J. Super. Ct. App. Div. 2010)).

Additionally, courts have found that similar provisions encompass NJLAD and other claims, even if not expressly mentioned in the arbitration agreement. *See, e.g.*, *Martindale*, 800 A.2d at 879 (finding that the arbitration agreement was sufficiently broad to encompass plaintiff's NJLAD and New Jersey Family Leave Act claims because "plaintiff agreed to waive her right to a jury trial 'in any action or proceeding relating to [her] employment with [the company]' and that 'all disputes relating to [her] employment with [the company] or termination thereof' shall be subject to

arbitration"); *Jones v. Dish Network LLC*, No. A-2653-12T4, 2013 WL 6169215, at *4 (N.J. Super. Ct. App. Div. 2013) (finding that an arbitration provision covering "any claim, controversy and/or dispute . . . arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment" was a waiver of plaintiff's right to a judicial forum under the NJLAD). Accordingly, because a valid arbitration Agreement exists that covers the scope of the claims at issue, I recommend that Schwab's Motion be granted.

### E. Schwab's Request to Stay This Action

Finally, Schwab asks the Court to stay proceedings pending the completion of arbitration. Dkt. No. 6-1 at 12. Ms. Pagano does not address this argument. As the Third Circuit has observed, "[t]he FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing 9 U.S.C. §§ 3, 4, 206). Therefore, I recommend a stay of all proceedings pending completion of arbitration.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Schwab's Motion to Compel Arbitration be GRANTED and that this matter be stayed pending the arbitration proceedings. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); L. Civ. R. 72.1(c)(2). It is further ORDERED that the Clerk of Court shall TERMINATE the

Motion pending at Dkt. No. 6 and activate this Report and Recommendation for the District Judge's review.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2026

Orig: Clerk of Court
cc: Counsel of Record
The Honorable Brian R. Martinotti, U.S.D.J.